## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| STATE FARM FIRE & CASUALTY | ) | |
| COMPANY A/S/O KENNETH | ) | |
| BURKHART, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | NO. 1:13-CV-184 |
| VS. | ) | |
| | ) | |
| GENERAL MOTORS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>OPINION AND ORDER</u>

This matter is before the Court on: (1) Defendant General Motors LLC's Motion for Summary Judgment, filed on September 24, 2013; and (2) Plaintiff's Motion to Stay Decision of Summary Judgment Pending Outcome of State Court Appeal, filed on November 20, 2013. For the reasons set forth below, the motion for summary judgment is **GRANTED**. Further, because the state court appeal has been completed, *State Farm Fire & Cas. Co. v. Niswander*, No. 35A02-1307-CT-638, 2014 WL 1383254 (Ind. Ct. App. April 9, 2014), the motion to stay is **DENIED as moot**. Accordingly, the clerk is **ORDERED** to **dismiss this case with prejudice.**

BACKGROUND

On January 11, 2010, Kenneth Burkhart's 2006 GMC Sierra caught fire at his home, damaging the home as well as personal property. On May 7, 2013, State Farm filed this five-count subrogation action in Huntington Superior Court, as the insurer of the damaged home and three automobiles, including the 2006 GMC Sierra (hereinafter the "vehicle") owned by State Farm's insured, Kenneth Burkhart. State Farm contends the fire was caused by a defect in the vehicle. Specifically, Count I alleges defective manufacturing of the vehicle; Count II alleges defective design of the vehicle; Count III alleges negligent manufacturing of the vehicle; Count IV alleges negligent design of the vehicle; and Count V alleges General Motors breached its implied warranty of merchantability. On June 10, 2013, General Motors removed this case to this Court.

In the instant motion for summary judgment, General Motors argues that each of State Farm's claims are outside the applicable statute of limitations and, thus, must be dismissed because they are time barred. In response, State Farm concedes Count V should be dismissed. (DE# 22, p. 9). Thus, this Court must determine if Counts I-IV are barred by the applicable statute of limitations.

DISCUSSION

Summary Judgment Standard

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). A party opposing a properly supported summary judgment motion may not rely on allegations in her own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). If the non-moving party fails to establish the existence of an essential element on which he or she bears the burden of proof at trial, summary judgment is proper. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

Facts

On January 10, 2010, the vehicle caught fire at Burkhart's home, causing damage to the home and personal property. As the insurer, State Farm's Product Investigation Unit sent a written notice to General Motors a few days after the fire, advising of the fire and State Farm's potential subrogation against General Motors. (DE#24, Ex. B). Specifically, State Farm wrote, "[o]ur preliminary investigation indicates that General Motors may be responsible for this loss. Please consider this as our notice of possible subrogation and our notice to you of the opportunity to schedule an inspection of vehicle/undisturbed scene." (DE #24, Ex. B). In response to State Farm, ESIS, General Motors' third-party administrator, wrote "[y]our correspondence alleges that your insured sustained property damages as a result of a manufacturer's product defect. However, insufficient technical documentation was provided relative to any alleged defect." (DE #24, Ex. C).

State Farm retained Herndon & Associates to conduct an origin and cause investigation of the fire, which included an examination of the vehicle. (DE #18, Ex. B). In his February 1, 2010, Origin and Cause Report, Timothy Herndon concluded:

> [I]t is the opinion of this Investigator that the fire was an accidental combustible fluid fire. It is further the opinion of this Investigator that he fire originated in the ignition of oil leaking from the valve cover/gasket on the right or passenger's side engine onto hot surfaces of the manifold and upon ignition the fire extended upward and outward from that location causing the damage present. The fire is classified as an

-4-

accidental fire.

(DE# 18, Ex. B, p. 8).

Mechanic Edward Nightingale, also of Herndon & Associates, conducted a mechanical examination of the engine, including an inspection of the rocker cover and gasket, and authored an accompanying report. (DE# 18, Ex. B, pp. 10-12). In his February 2, 2010, report, Mr. Nightingale stated:

> Having completed a mechanical analysis of the vehicle, it is the opinion of this Investigator that there is evidence of oil leakage from the right valve cover gasket between the valve cover gasket and the cylinder head, it should further be noted that this sealing line is broken up in the right lower front and the right lower rear, indicating a leak between the gasket and cylinder head, furthermore there is residue buildup on the right cylinder head in the front, rear and rear-center portions further indicating oil leakage.

(DE# 18, Ex. B, p. 12).

On April 8, 2010, State Farm's Product Liability Investigation unit sent another letter to ESIS, stating, in relevant part, "I have enclosed the narrative from the origin and cause report as well as the mechanical analysis of the vehicle. Photos of the same are available upon request." (DE# 18, Ex. D).

On December 10, 2010, State Farm's counsel had a conversation with Timothy Herndon. Herndon noted that the fluid that combusted could have been spilled during the course of a recent servicing that was done at the H.H. Niswander dealership. (DE# 22, Ex. A, ¶¶ 10-11). During this conversation, Herndon did not explicitly state "there was a product liability issue." (DE# 22, Ex. A, ¶¶ 13).

On December 21, 2010, State Farm filed a subrogation complaint against H.H. Niswander, Pontiac, Buick, Cadillac, GMC Truck, Inc., in the Huntington County, Indiana, Circuit Court, Cause No. 35C01-1012-CT-1326 (hereinafter "Niswander action"). (DE# 18, Ex. C). In that case, State Farm alleged that Burkhart had an oil change performed on the vehicle at H.H. Niswander about a week before the fire. State Farm further alleged that the oil leak that started the fire was due to H.H. Niswander's negligence in performing the oil change. (DE# 18, Ex. C).

On February 6, 2012, State Farm's counsel had a second conversation with Timothy Herndon regarding the reports. During this conversation, counsel made clear to Herndon that H.H. Niswander was the party that would be deposing him. (DE# 22, Ex. A. ¶ 18). Also during this second conversation, it was noted that an H.H. Niswander employee was the last person in the engine compartment approximately one week prior to the fire. (DE# 22, Ex. A. ¶ 19).

On March 7, 2012, Mr. Herndon was scheduled to be deposed and give testimony regarding the conclusions he reached in the February 2010 Origin and Cause Reports. On this day before the deposition, State Farm's counsel had a third discussion with Herndon. (DE# 22, Ex. A. ¶ 20). During this discussion, "it became clear to [State Farm's counsel] that Herndon believed that, as a dealership, Niswander was responsible for vehicle defects." (DE# 22, Ex. A. ¶

-6-

21).  "Herndon indicated that he believed that a leakage of oil that caused the fire was due to a defective oil cover gasket." (DE# 22, Ex. A. ¶ 22).  After this discussion, State Farm's counsel "realized for the first time that the claim sounded in product liability and not in negligence."  (DE# 22, Ex. A. ¶ 23).

At his March 7, 2012, deposition, Herndon offered the following:

> Q:   What is your opinion as to the cause of the fire?
>
> A:   My opinion is that it was an accidental fire originating in the engine compartment of the vehicle in question where I found evidence of oil leakage from the valve cover having run down on to the exhaust system that caused the fire.
>
> We took it a step further, had our master mechanic remove the valve cover itself and confirm that oil was, in fact, bypassing the gasket.
>
> Q:   So, when you say that, would that be a manufacturing defect?
>
> A:   It would.
>
> Q:   Was that the ultimate cause of the fire?
>
> A:   That's correct.

(DE# 24, Herndon Tr., March 7, 2012, p. 6; Ex. A).

On April 9, 2013, State Farm's negligence case against H.H. Niswander was dismissed with prejudice.  (DE# 18, Ex. D).  The trial court found that "[State Farm] knew, prior to the filing of this suit, that [State Farm's] experts were of the opinion that [H.H. Niswander] did not cause the fire.  (DE# 18, Ex. D).  Thus, not only did the trial court dismiss the case, it sanctioned State

Farm to pay defendant's attorney fees.  (DE# 18, Ex. D).  And, on April 14, 2014, the Indiana Court of Appeals affirmed the trial court's order.  *State Farm Fire & Cas. Co. v. Niswander*, No. 35A02-1307-CT-638, 2014 WL 1383254 (Ind. Ct. App. April 9, 2014).

On May 7, 2013, State Farm filed this case against General Motors alleging the instant product liability claims against General Motors.


Statute of Limitations

General Motors argues State Farm's claims are barred by the applicable statute of limitations.  It is unquestioned that a two year statute of limitations applies to the product liability causes of action in this case (Counts I-IV).  Ind. Code § 34-20-3-1.  What is in dispute, however, is the accrual date for these product liability claims.  "The question of when a cause of action accrues is generally one of law for the courts to determine." *Perryman v. Motorist Mutual Insurance Co.,* 846 N.E.2d 683, 687 (Ind. Ct. App. 2006)(citation omitted).

State Farm argues its product liability claims are within the statute of limitations based upon the discovery rule.  "The 'discovery rule' states that the statute of limitations begins 'to run from the date the plaintiff knew or should have discovered that she suffered an injury or impingement, and that it was caused by the product or act of another.'" *Morgan v. Columbus McKinnnon*

-8-

*Corp.*, 837 N.E.2d 546, 549 (Ind. Ct. App. 2005)(quoting *Degussa Corp. v. Mullens*, 744 N.E.2d 407, 410 (Ind. 2001).

The parties do not dispute that State Farm became aware of the fire in January 2010. Nevertheless, State Farm maintains that its causes of action did not accrue when it became aware of the fire, but instead commenced on March 7, 2012, when State Farm's counsel first realized this was a product liability case.[1] To support this theory, State Farm points out the facts known by its counsel after conducting an investigation but prior to March 7, 2012, were: (1) the fire was classified as an "accidental combustible fluid fire;" (2) Niswander changed the oil in the vehicle one week prior to the fire; (3) Niswander's employee was the last person to be in the engine compartment of the vehicle prior to the fire; (4) product liability was never mentioned in the expert reports; (5) the reports state there was no manufacturer recall related to the issue that caused the fire; and (6) Herndon never told State Farm's counsel of a potential product defect during two discussions prior to his March 7, 2012, deposition. Based upon these facts, State Farm argues, until March 7, 2012, its counsel reasonably believed

---

[1]Notably, in its Statement of Genuine Issues, State Farm presents its evidence is an obtuse light. For example, by citing paragraph 23 of Attorney Michael Smith's affidavit, State Farm claims that "March 7, 2012 was the first time that undersigned was informed by Herndon that the cause of the fire was due to a manufacturing defect." (DE# 22, p. 3) However, Paragraph 23 of Attorney Smith's affidavit actually provides, "After the third discussion [with Herndon] undersigned realized for the first time that the claim sounded in product liability and not in negligence." (DE# 22, Ex. A, ¶ 23). This Court relies on the factual record, not State Farm's overly generous interpretation, in ruling on the instant motion for summary judgment.

that the cause fo the fire was a maintenance issue related to Niswander's service of the vehicle.

Basically, State Farm is seeking to apply the discovery rule to not only awareness of a sustained injury, but also knowledge of his legal causes of action. Such an expansion of the discovery rule has been addressed and rejected by the Indiana Court of Appeals in *Perryman*, 846 N.E.2d 683. The court in *Perryman* concluded that "the discovery rule only postpones the statute of limitations by belated discovery of key facts and not by delayed discovery of legal theories." *Id.* at 689 (citations omitted). With that in mind, the *Perryman* court went on to explain:

> [t]he exercise of reasonable diligence means simply that an injured party must act with some promptness where the acts and circumstances of an injury would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist. The statute of limitations runs from this point and not when advice of counsel is sought or a full blown theory of recovery developed.

*Id.*

Based upon the record, it is clear that State Farm was aware of the fire in January 2010. Following the fire, State Farm sent written notice to General Motors stating that its preliminary investigation revealed that General Motors may be liable for the fire. And, the February 2010 expert reports from Herndon and Nightengale concluded that there was oil leaking from the valve cover/gasket and also that a sealing line was broken, indicating a leak between the gasket and cylinder head. And, that it was that oil leaking onto

the exhaust system that started the fire.  It is true that Herndon may have first explicitly classified the cause of the fire as a "manufacturing defect" in March of 2012.[2]  However, that was also the first time Herndon was explicitly asked if the fire was a result of a manufacturing defect.  Regardless, "the law does not require a smoking gun in order for the statute of limitations to commence."  *Id.(citation* omitted).

Based on its knowledge of the fire, the investigation and the expert reports, State Farm had all the key facts by February 2010. And, there is no evidence that either Herndon or Nightingale ever refuted a products liability claim.  State Farm simply developed its theory of recovery too late.  Therefore, pursuant to Indiana Code section 34-20-3-1, State Farm's cause of action should have been brought within two years from the date of the fire.  However, State Farm did not file suit until May 7, 2003.  Thus, State Farm's claims are time barred.

CONCLUSION

For the reasons set forth above, the motion for summary judgment is **GRANTED.**  Further, because the state court appeal has been completed, *State Farm Fire & Cas. Co. v. Niswander*, No. 35A02-1307-CT-638, 2014 WL 1383254 (Ind. Ct. App. April 9, 2014), the

---

[2]Notably, there is no evidence that State Farm asked Herndon prior to March 2012 whether the fire could have been caused by a defect nor is there evidence that Herndon ever denied an alleged defect was present in the vehicle.

motion to stay is **DENIED as moot.**   Accordingly, the clerk is **ORDERED** to **dismiss this case with prejudice.**

DATED:  May 16, 2014                    /s/RUDY LOZANO, Judge
                                        **United States District Court**